IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 1, 2020

**PAUL WRIGHT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lauderdale County**
No. 10551     Joseph H. Walker, III, Judge
_____

**No. W2019-02116-CCA-R3-PC**
_____

The Petitioner, Paul Wright, pleaded guilty to six counts of rape of a child, a Class A felony, and seven counts of aggravated sexual battery, a Class B felony. The trial court imposed an effective sentence of twenty-five years. The Petitioner timely filed a post-conviction petition, alleging that his guilty plea was not knowing and voluntary and that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied relief, concluding that the Petitioner had not proven Counsel was deficient or shown prejudice. On appeal, the Petitioner maintains his guilty plea was not knowing and voluntary and that he received the ineffective assistance of counsel. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Scott A. Lovelace, Ripley, Tennessee, for the appellant, Paul Wright.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Joni R. Glenn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Lauderdale County grand jury indicted the Petitioner for six counts of rape of a child, seven counts of aggravated sexual battery, and one count of sexual exploitation of a minor by electronic means. By agreement of the parties, the Petitioner pleaded guilty to six counts of rape of a child with a sentence of twenty-five years for each count, to be served at 100% by statute, seven counts of aggravated sexual battery with a sentence of

eight years for each count, to be served at 100% by statute, and the State requested dismissal of the single count of sexual exploitation of a minor by electronic means. The sentences were to be served concurrently for an effective sentence of twenty-five years in the Tennessee Department of Correction.

At the guilty plea submission hearing, the State summarized the facts of the case. The victim was seven years old at the time of the offenses, and the Petitioner supervised the victim after she returned home from school every day. It was during this time that the Petitioner engaged in ongoing sexual activity with the victim, including sexual penetration and sexual contact. In September 2017, the victim disclosed the sexual interactions with the Petitioner, prompting a police investigation. In a statement to the police, the Petitioner admitted to sexual penetration and sexual contact with the victim consistent with the victim's account. Following the State's recitation of the facts of the case, the Petitioner stipulated to the facts. The Petitioner testified that he was sixty-seven years old at the time of his guilty plea and had an eighth grade education. The Petitioner identified the plea agreement and affirmed that he understood the proceedings. The Petitioner further confirmed that he was satisfied with his attorney's representation and was willingly entering a plea of guilty.

Following his guilty plea, the Petitioner timely filed a post-conviction petition asserting that his guilty plea was not knowing and voluntary and that his attorney ("Counsel") was ineffective. As relevant to this appeal, the Petitioner asserted that: (1) his guilty plea was not knowing and voluntary due to his mental impairments; (2) Counsel made misrepresentations that the Petitioner relied upon in deciding to enter a guilty plea; (3) Counsel failed to have the Petitioner mentally evaluated; (4) Counsel failed to confer with him about possible defenses; and (5) Counsel failed to investigate.

The post-conviction court held a hearing on the petition. At the hearing, the Petitioner testified that he was sixty-eight years old and could "read a little bit" and could not "write hardly any." The Petitioner stated that he did not make Counsel aware of his difficulty with reading and writing. The Petitioner stated that he did not "really" understand the guilty plea proceedings. He explained that he did not "understand the confession," but was "told about it later." He recalled that he signed the plea agreement because Counsel told his family that if the Petitioner signed the plea agreement, the Petitioner would be able to "visit with [the family] open air that day." He said he began to sign the plea agreement but then told Counsel he wanted a jury trial. Counsel responded that the jury would "give [the Petitioner] the same thing." The Petitioner testified that he signed the plea agreement because he did not want to "waste the Court's time" if a jury would "give [him] the same thing." The Petitioner said that after he signed the plea agreement, he still did not get "open-air visitation" with his family.

- 2 -

The Petitioner testified that he met with Counsel three times for a few minutes each time. The Petitioner said that each time he tried to explain his position to her and she would respond, "you confessed" and then leave. The Petitioner said that Counsel did not explain to him the charges, the consequences of a guilty plea, or possible sentencing.

The Petitioner testified that, prior to his arrest, he lived with his daughter who served as his power of attorney. The Petitioner reiterated that he had difficulty reading and noted that his difficulty had grown worse over the years. The Petitioner denied any memory of making a statement to the police and stated that he had never seen his alleged confession to the police. The Petitioner testified that he was unaware that he had had a mental evaluation until his post-conviction attorney told him about the mental evaluation. The Petitioner recalled "going to Jackson" and being asked a lot of questions; however, he did not realize at the time that he was undergoing a mental evaluation.

When asked about his allegation that Counsel failed to "have a presentence officer look at this case," the Petitioner replied that he did not know how that would have benefitted his case. The Petitioner maintained that Counsel did nothing with regard to his case.

On cross-examination, the Petitioner explained that he made the assertion that he did not undergo a mental evaluation in his petition because he did not realize he had been evaluated at the time he filed the petition. The State moved that the mental evaluation report be made an exhibit. The report, dated November 30, 2017, and included in the record, states that the Petitioner had "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." The report further states that the Petitioner "was able to appreciate the nature or wrongfulness of such acts."

The State next asked the Petitioner about his confession to the police. The State provided the Petitioner with the statement. The statement contains questions and then handwritten responses that are initialed "PW." The bottom of the document bears the Petitioner's signature. The Petitioner identified his signature and initials on the police statement but denied any memory of "those questions." The State moved that the police statement be made an exhibit to the hearing.

The Petitioner testified that at the guilty plea hearing when asked if he wanted to plead guilty, he responded affirmatively. He denied that Counsel ever threatened him.

Counsel testified that she was appointed to the Petitioner's case after the Public Defender's Office was removed due to a conflict. She believed her appointment was fairly early in the case but recalled that a mental evaluation had already been requested.

Counsel recalled meeting with the Petitioner on five occasions. She said they discussed the facts of the case, the Petitioner's confession, and potential trial testimony. A preliminary hearing was scheduled but, on that day, the Petitioner told Counsel that he did not want the preliminary hearing because he "didn't want to put his family through it." The Petitioner's case was bound over to the grand jury without a hearing.

Counsel testified that she reviewed the discovery with the Petitioner at the jail. She recalled that the Petitioner was having medical issues while in jail because he was not receiving blood thinners. Counsel met with the Petitioner on a second occasion in jail to obtain a HIPAA release in order to assist with the Petitioner's health issues. Counsel confirmed that the Petitioner suffered a stroke while awaiting resolution of these charges. The Petitioner was not mentally evaluated again following the stroke, but Counsel met with the Petitioner on two occasions following the stroke and did not notice any issues with competency.

Counsel testified that the Petitioner appeared to understand their discussions about his case. Counsel said that the Petitioner conversed with her about his charges and provided specific facts that were not included in the affidavit for the charges. Counsel confirmed that the Petitioner answered her questions and assisted in the case. She acknowledged that, following his stroke, the Petitioner appeared physically weak but that he was still able to discuss the implications of a plea, the facts of the case, and the possibility of a trial. Counsel could not recall if the Petitioner or one of his family members mentioned the Petitioner's lack of education.

Counsel testified that she made inquiries about potential alternative sentencing solutions due to the Petitioner's age and physical disability; however, there "were not statutes" allowing alternative sentencing based upon the Petitioner's charges. Counsel testified that the only "motivation" the Petitioner ever mentioned for pleading guilty was his desire to protect his family from a trial on the charges.

On cross-examination, Counsel testified that during her six years of practice she had worked with clients whose behavior drew concern about competency. She did not observe anything that caused her to question the Petitioner's competency during their interactions. Counsel confirmed that she discussed possible defenses with the Petitioner, and he suggested that the defense strategy be that the victim "asked him for the sexual encounters." Counsel advised the Petitioner that a jury would likely not respond well to that defense. Based upon her experience and knowledge of this case, Counsel believed that the outcome of a jury trial "could have possibly been worse" than the State's settlement offer.

The post-conviction court issued a subsequent written order.

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

It is from this judgment that the Petitioner appeals.

## I. Analysis

On appeal, the Petitioner maintains that his guilty plea was not knowing and voluntary and that Counsel was ineffective. Specifically, he asserts that: (1) his guilty plea was not knowingly entered due to mental impairment; (2) that his guilty plea was not knowingly entered because it was based upon Counsel's misrepresentations to the Petitioner; (3) Counsel failed to have him evaluated; (4) Counsel failed to confer with the Petitioner about possible defenses; and (5) Counsel failed to adequately investigate. The State responds that the Petitioner has not proven his claims or shown any prejudice resulting from Counsel's representation. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v.*

*Cronic*, 466 U.S. 648, 665 n.38 (1984)).  Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.  *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).  "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.  However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'"  *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).  This reasonable probability must be "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).  In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea.  Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

## A. Involuntary Guilty Plea

The Petitioner argues that his guilty plea was not voluntary due to his mental impairments and physical condition and because his guilty plea was induced by Counsel's misrepresentations.

In determining whether a guilty plea was knowingly and voluntarily entered, the standard, of course, is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The trial court may consider several factors in making this determination, including:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn.2006) (citing *Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn. 1993). As a means of determining whether a plea is knowingly and voluntarily entered, the courts must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244; *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id*. at 74.

In the order denying relief, the post-conviction court made the following findings:

The Petitioner freely entered a plea of guilty.

Nothing in the record of the plea indicates that the [Petitioner]'s plea was involuntary. The record reveals that the trial court thoroughly questioned the [Petitioner] about his decision to plead guilty and that the [Petitioner] was well-aware of his right to proceed to trial and the possible consequences of either action before he pled guilty.

The transcript indicates that the [Petitioner] understood he was entering a plea of guilty to the offenses. He had gone over a "Plea of guilty" form with his attorney.

. . . .

Petitioner has failed to demonstrate a reasonable probability that, but for counsel's deficiency, he would have insisted upon proceeding to trial.

At the post-conviction hearing, the Petitioner testified that he had difficulty reading and writing. Counsel testified that the Petitioner engaged in discussion about his case, asked questions, answered questions, and assisted in his defense. Counsel confirmed that the Petitioner had a stroke while this case was pending. Counsel met with the Petitioner five times, both before and after his stroke, and nothing in their interactions raised concern about his competency. The transcript of the plea colloquy indicates that the Petitioner knowingly and voluntarily entered his guilty plea and that he was aware of the charges and the consequences of entering a plea of guilt. The Petitioner expressed to

Counsel his desire to plead guilty in order to prevent his family from having to go through a trial.

Having reviewed the appellate record before us, we are not persuaded that the evidence preponderates against the Circuit Court's findings in support of its conclusion that the Petitioner's knowingly and voluntarily entered the guilty plea. The Petitioner offered no medical testimony or evidence at the post-conviction hearing in support of his claim of mental impairment. The evidence presented was to the contrary. Counsel testified that she did not observe any behavior during their interactions that raised concern about competency. The Petitioner told Counsel that he wanted to enter a guilty plea to protect his family from undergoing a trial on child sexual abuse-related charges. The guilty plea hearing transcript shows that the Petitioner engaged in the colloquy and appropriately responded to all of the trial court's questions. Finally, the mental evaluation conducted indicated that the Petitioner was competent and appreciated the wrongfulness of his actions. Accordingly, nothing in the record supports the conclusion that the Petitioner's plea was not knowing and voluntary.

The Petitioner also contends that he was "induced to plead based on representations and promises made to him by his defense attorney, which never materialized." The Petitioner does not further elaborate on the "representations and promises" alleged in his brief, but he cites to the portion of the record where the Petitioner testified that Counsel told his family he could visit with them "open air" if he signed the plea agreement. At the hearing when the Petitioner was asked if the opportunity for an "open air" visit had influenced his decision to enter the guilty plea, the Petitioner responded that he ultimately signed the agreement because Counsel told him that a jury would "give [him] the same thing," so he signed the agreement to avoid "wast[ing] the Court's time."

The evidence does not support a conclusion that the Petitioner was induced by misrepresentations to enter a guilty plea. The Petitioner testified that he signed the plea agreement because a jury would give him the same sentence, and he did not want to waste the trial court's time. Counsel testified that the Petitioner wanted to plead guilty because he did not want to put his family through the difficulty of a trial. The Petitioner has failed to show by clear and convincing evidence that he pleaded guilty in reliance on Counsel's alleged misrepresentations that he could have "open air" visitation with his family.

Accordingly, we conclude that the Petitioner has not shown that his plea was not knowingly and voluntarily entered. He offered no proof to support his conclusory allegations that he was incompetent at the time of his plea or that Counsel's alleged

misrepresentations induced him to enter a guilty plea. Therefore, the Petitioner is not entitled to relief.

## B. Ineffective Assistance of Counsel

The Petitioner asserts that Counsel was ineffective for failing to discuss potential defenses, failing to seek a second mental evaluation following his stroke, and her failure to adequately investigate the case. The State responds that the Petitioner has not established a basis for relief.

In the order denying relief, the post-conviction court made the following findings:

> The Court finds that Petitioner was adequately informed of the nature and consequences of the plea agreement, and the punishment to be received. His attorneys made adequate investigation of the facts.

> The law is well-settled that a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between possible consecutive sentences on a plea of not guilty and a lesser sentence upon a guilty plea. If an accused is to make a voluntary and intelligent choice among the alternative courses of action available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices. That was done in this case. If counsel is convinced that the accused should accept a plea bargain agreement and plead guilty, counsel should recommend that the accused opt for this choice. Counsel may use reasonable persuasion when making the recommendation.

> . . . .

> The [Petitioner] was fully aware of the direct consequences of the plea. He was informed at the plea hearing of the sentence.

(citation omitted).

The evidence does not preponderate against the post-conviction court's findings. The seven-year-old victim disclosed the Petitioner's conduct and a police investigation ensued. The Petitioner's statement to police was largely consistent with the victim's allegations of sexual penetration and sexual contact. Counsel testified that she reviewed all of the discovery with the Petitioner and discussed potential defenses; however, the Petitioner's admission to sexual activity with a seven-year-old child left few options for a

defense strategy. The only defense identified by the Petitioner was to assert that the victim initiated the sexual activity. Based upon her experience and knowledge of the law, Counsel did not believe this was a viable defense. A mental evaluation was requested, ordered, and conducted, the outcome of which was a determination that the Petitioner was competent to stand trial and appreciated the wrongfulness of his conduct. Counsel considered the potential sentence at trial if the trial court ordered consecutive sentencing and advised the Petitioner of his potential sentence. She negotiated the lowest possible sentence and explored alternative sentencing due to the Petitioner's age and health issues. Due to his offenses, the Petitioner was required by statute to serve his sentences at 100%, thereby precluding alternative sentencing. This evidence supports the conclusion that Counsel investigated the case and then discussed with the Petitioner the facts, potential trial testimony and possible, albeit limited, defense strategies.

The Petitioner also asserts that Counsel failed to have him evaluated a second time after his stroke. Counsel testified that she met with the Petitioner both before and after the stroke. She noted that although the Petitioner was more physically weak following the stroke, he demonstrated nothing to indicate a concern regarding his mental competency. Counsel's observations of the Petitioner are supported by the transcript of the plea colloquy.

Accordingly, we conclude that the Petitioner has failed to show by clear and convincing evidence that Counsel failed to investigate his case or failed to discuss possible defenses with him. The Petitioner has also failed to show that Counsel was deficient for failing to seek a second mental evaluation following his stroke, or how the lack of a second mental evaluation was prejudicial to him. Counsel negotiated the lowest possible sentence for the Petitioner and, in so doing, allowed him to prevent his family from the rigors of a trial. The Petitioner is not entitled to relief as to this issue.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE